## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TURREL DAVID,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CIVIL NO. JKB-23-2564** |
| **TESLA INC. et al.,** | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss. (ECF No. 27.) For the reasons discussed below, the Court will grant the Motion to the extent it seeks to compel arbitration and will deny as moot the Motion to the extent it seeks dismissal of the claims pursuant to Rule 12(b)(6). The Court will dismiss the case without prejudice.

### I.   Factual and Procedural Background

In his Fourth Amended Complaint, pro se Plaintiff David Turrell raises issues relating to his employment with and eventual termination from Tesla, Inc. (ECF No. 7.) David brings claims of: Wrongful Termination; Racial Discrimination; Color Discrimination; LGBTQ+ Discrimination; Disability Discrimination; Harassment & Hostile Work Environment; Retaliation; Negligence; Defamation; and Breach of Contract. (*See generally id.*) He brings these claims against his former employer and certain individuals: Tesla Inc., Tesla Motors, Inc., Elon Musk, Douglas Adams, Jason Sampson, Nina Matos, Shawn Ward, Rama Chari, Emily Eskay, Mohammad Tawil, Valerie Capers Workman, Allie Arebalo, and Troy Jones. (*Id.*) As is relevant here, Plaintiff's Offer Letter, which he signed on December 29, 2016, included an Arbitration Clause, which provides that:

[T]o ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by ***final, binding and confidential arbitration*** in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

> a. Any claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and

> b. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and

> c. The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and

> d. The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and

> e. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and

> f. Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration. Notwithstanding the foregoing, you and Tesla each have the right to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement by Court action instead of arbitration.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims.

2

(ECF No. 27-2 (emphasis in original).)  The letter was from Tesla Motors, Inc. and contains a signature from Elon Musk, Chairman of the Board and CEO of Tesla Motors, Inc.  (*Id.*)

## II.   Legal Standard

As an initial matter, in Defendants' pending Motion, they argue that that "[i]n the event that any of Plaintiff's claims are not dismissed based on the arguments [in favor of dismissing the claims under Federal Rule of Civil Procedure 12(b)(6)], Plaintiff must pursue those claims, if at all, through binding arbitration."  (ECF No. 27 at 16.)  Thus, Defendants' proposed approach is for the Court to first entertain the Rule 12(b)(6) arguments and then compel the remaining claims, if any, to arbitration.  The Court issued a Show Cause Order, directing Defendants to provide authority for this bifurcation.  (ECF No. 38.)

Defendants' response to the Show Cause Order does not convince the Court that their proposed approach is sound, and the Court declines to proceed on that basis.  The Court recognizes that the filing of a motion to dismiss does not necessarily waive the right to later compel arbitration. However, that is simply not the circumstance here; the question of waiver is not the issue before the Court.  Rather, the Court has been presented with simultaneous requests to dismiss the claims pursuant to Rule 12(b)(6) and to compel them to arbitration.  The Court finds that, in this circumstance, the proper order of operations is to first rule on the motion to compel, and that entertaining Defendants' Rule 12(b)(6) arguments first would be contrary to "Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation."  *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002).  Further, the Fourth Circuit has explained that the Federal Arbitration Act's ("FAA") "stay-of-litigation provision is mandatory.  A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration

3

agreement exists and the issues in a case fall within its purview." *Id.*[1]

As the Fourth Circuit has explained, "arbitration clauses are enforced in court by way of Federal Rule of Civil Procedure 12(b)(3) motions to dismiss for improper venue. In considering such motions, courts may examine evidence outside the pleadings—including, as relevant here, the contract containing the applicable arbitration clause." *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 594 n.2 (4th Cir. 2023). Further, "[a] plaintiff is obliged [] to make only a prima facie showing of proper venue in order to survive a motion to dismiss. In assessing whether there has been a prima facie venue showing, we view the facts in the light most favorable to the plaintiff." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012) (citations omitted).

## III.    Analysis

### A.   Arbitrability of Plaintiff's Claims

The FAA reflects "a liberal federal policy favoring arbitration agreements." *Adkins*, 303 F.3d at 500 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). A party may compel arbitration if it demonstrates the following:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

*Id.* at 500–01. The Court finds that these factors have been met.

First, there is a dispute between the parties in the form of Plaintiff's claims regarding his employment. Second, the Arbitration Clause purports to cover "any and all disputes, claims, or

---

[1] Other courts in this district take this approach. For instance, one of the cases to which Defendants cite in response to the Court's Show Cause Order concludes as follows: "Because the [] arbitration provision covers [plaintiff's] claims, she must pursue the claims in that forum. Moreover, because all claims must proceed in arbitration, the Court will dismiss the Complaint without prejudice. The Court declines to reach [the defendant's] alternative grounds for dismissal." *Potts v. Excalibur Assocs., Inc.*, Civ. No. 22-02565-PX, 2023 WL 3251410, at *4 (D. Md. May 3, 2023). The Court finds that approach wise here.

causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment." (ECF No. 27-2 at 2.) This covers the claims brought by the Plaintiff, as his claims all arise from his employment and eventual termination. *See Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349–50 (4th Cir. 2001) (explaining that there is a "heavy presumption" in favor of arbitrability, and that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration).[2] Third, no party disputes that the transaction involves interstate commerce, and the Court finds that it does, given the national scope of Tesla's business. *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012) (explaining that "the reach of the [FAA] is broad. It operates to enforce an arbitration provision included in 'a contract evidencing a transaction involving commerce.'" (quoting 9 U.S.C. § 2).) Finally, Plaintiff has not attempted to arbitrate the dispute, and appears to refuse to do so.

### B. Validity of the Arbitration Clause

Having found that the requirements for compelling arbitration have been met, the Court examines the enforceability of the Arbitration Clause in more detail, as the Plaintiff raises various issues on this front. The Court finds that the Arbitration Clause is enforceable.

Whether parties have a valid arbitration agreement governing a dispute is a question of applicable state contract law. *Adkins*, 303 F.3d at 501. "Under Maryland law, to be binding and enforceable, an arbitration agreement must be a valid contract." *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (citing *Cheek v. United Healthcare of Mid–Atlantic, Inc.*, 835 A.2d 656, 661 (Md. 2003)). "To be binding and enforceable, a contract must be supported by

---

[2] Plaintiff argues that his claims do not come within the scope of the Arbitration Clause and points to the following language in the agreement: "[a]rbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims . . ." (ECF No. 30 at 4–5.) However, this language only permits Plaintiff to bring *administrative* claims before *government agencies* without submitting them to arbitration. It does not speak to Plaintiff's ability to bring a case before this Court.

consideration." *Id.*

The Arbitration Clause is supported by consideration. The mutual exchange of promises to arbitrate constitutes valid consideration, *Cheek*, 835 A.2d at 665, and the Arbitration Clause provides that "*you and Tesla* agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and confidential arbitration." (ECF No. 27-2 (emphasis added).)

Further, as this Court has recently explained:

> In Maryland, a contract may be declared invalid and unenforceable if unconscionable. A contract is unconscionable where one party lacked meaningful choice in agreeing to its terms and where the contractual terms unreasonably favor the other party. To make this showing, the movant must demonstrate that the provision is both procedurally and substantively unconscionable. A provision is substantively unconscionable when its terms are unreasonably favorable to the more powerful party, impair the integrity of the bargaining process or otherwise contravene the public interest or public policy, attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, or are otherwise unreasonably and unexpectedly harsh. Procedural unconscionability requires a showing of extreme unfairness, where a party has been deprived any meaningful choice and the contractual terms unreasonably favor the other party.

*Randolph v. RRR Bowie, LLC*, Civ. No. 22-2150-PX, 2023 WL 7110516, at *3 (D. Md. Oct. 27, 2023) (citations, quotations, and alterations omitted).

Plaintiff argues that the Arbitration Clause is unconscionable or otherwise unenforceable for several reasons. The Court does not find that any of the reasons proffered by the Plaintiff render the agreement unenforceable.

First, Plaintiff argues that the terms of the Arbitration Clause are "excessively favorable" to Tesla and that it gives Tesla too much power over the selection of the arbitrator (who Plaintiff alleges is biased in favor of Tesla), the venue, and the "terms for arbitration." (ECF No. 30 at 5–6.) He also argues that "[t]he arbitration clause lacks transparency by not specifying the detailed

6

rules nor detailed procedures governing the arbitration process[.]" (*Id.* at 6–7.) These contentions are factually untrue. The Arbitration Clause specifies that any arbitration will be conducted "by the [JAMS], or its successors, under the then current rules of JAMS for employment disputes[.]" (ECF No. 27-2 at 2.) As Defendants explain, the JAMS employment rules provide a "comprehensive bilateral arbitrator selection process." (ECF No. 37 at 14.)[3]

Second, Plaintiff argues that the Arbitration Clause was "presented on a take-it-or-leave-it basis" in his offer letter and that he had "no reasonable opportunity to negotiate the terms of the employment contract." (ECF No. 30 at 5–6.) However, "even a take-it-or-leave it proposition, by itself, does not establish procedural unconscionability." *Randolph*, 2023 WL 7110516, at \*4. Even contracts of adhesion—those "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis"—are only unconscionable if "the terms in the arbitration clause are so one-sided as to oppress or unfairly surprise an innocent party or [where] there exists an egregious imbalance in the obligations and rights imposed by the arbitration clause." *Walther v. Sovereign Bank*, 872 A.2d 735, 746 (Md. 2005). There is no such imbalance here, where both Plaintiff and Tesla bound themselves to arbitrate all employment-related disputes before an arbitrator subject to JAMS employment rules, as previously discussed.

Third, Plaintiff argues that "the language of the arbitration clause was buried within an extensive employment contract, making arbitration difficult to locate and understand" and that he "was not provided adequate time nor guidance to review the complex contractual terms." (ECF No. 30 at 6.) His argument is belied by the Offer Letter itself: the language is not particularly complex, the Offer Letter spans fewer than four pages, and the portion relating to arbitration spans

---

[3] Plaintiff also argues that the Arbitration Clause is unenforceable because JAMS "does not exist in Baltimore County Maryland and does not conduct arbitration in the state of Maryland." (ECF No. 30 at 4.) This argument has no merit. As Defendants explain, "JAMS can accommodate a Baltimore County, Maryland arbitration." (ECF No. 37 at 13.)

7

only about one (and indeed is copied in its entirety above). (ECF No. 27-2.) On these facts, the Court cannot find the Arbitration Clause unconscionable.

Fourth, he argues that the arbitration clause includes "excessive limitations on available remedies." (ECF No. 30 at 5.) Again, this is simply factually untrue, as the Arbitration Clause provides that "[b]oth you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law" and that "[t]he arbitrator shall have the authority to . . . order such relief as would otherwise be permitted by law." (ECF No. 27-2 at 3.)

Fifth, Plaintiff argues that the Arbitration Clause "waives important legal rights or remedies of the Plaintiff, such as the right to a jury trial and the right to appeal." (ECF No. 30 at 5.) However, if a plaintiff could avoid arbitration on this basis, arbitration agreements would generally be unenforceable. "[T]he mere fact that the Agreement required [the Plaintiff] to waive [his] jury trial right over employment-related claims does not render the Agreement substantively unconscionable." *Randolph*, 2023 WL 7110516, at *4; *see also Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 307 (4th Cir. 2001) ("The loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." (citation and quotations omitted).)

Sixth, Plaintiff argues that "[t]he arbitration agreement cannot be enforced because there are important public policy concerns at stake. In employment discrimination cases, there is a strong public policy interest in ensuring that employees have access to legal remedies to address workplace discrimination, harassment, and/or retaliation." (ECF No. 30 at 6.) The Court agrees that there is a public policy interest in ensuring that employees have access to remedies for violations of anti-discrimination, harassment, and retaliation laws. However, there is no reason for the Court to conclude that the arbitral forum is an inadequate venue in which Plaintiff may

vindicate his rights.    Courts consistently compel arbitration in the face of similarly broad employment-related arbitration agreements.  *See, e.g.*, *Adkins*, 303 F.3d at 500.[4]

### C.  Nonsignatory Defendants

Having determined that arbitration is appropriate, the Court now turns to whether the Defendants that were not party to the Arbitration Clause may compel arbitration in this case.  As noted above, the Offer Letter that contained the Arbitration Clause named Tesla Motors, Inc. and contained a signature from Elon Musk.

"Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce . . . an arbitration provision within a contract executed by other parties." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416–17 (4th Cir. 2000).  As is relevant here, the Fourth Circuit has explained that the

> [A]pplication of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise, the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)) (alterations and quotations omitted).  The Fourth Circuit has explained that, while there need not be "allegations of collusion[,] . . . at a minimum, there must be allegations of coordinated behavior between a signatory and a nonsignatory defendant, and that the claims against both the signatory and nonsignatory defendants

---

[4] Plaintiff responded to the Court's previously-discussed Show Cause Order, but raised additional arguments regarding the unconscionability of the Arbitration Clause. (*See* ECF No. 40.)  This was essentially a surreply that was filed without leave of court.  However, given Plaintiff's pro se status, the Court has reviewed the arguments he makes in that filing.  He largely repeats the arguments he had made in his opposition to Defendants' Motion, and the additional arguments he raises do not cause the Court to find that the Arbitration Clause is unconscionable or otherwise unenforceable.  For example, he explains that various U.S. Senators sent Elon Musk a letter expressing their concern regarding Tesla's use of arbitration clauses in consumer and employee contracts. (ECF No. 40-2.)  This does not change the Court's analysis regarding the enforceability of the Arbitration Clause.

must be based on the same facts, be inherently inseparable, and fall within the scope of the arbitration clause." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 374 (4th Cir. 2012) (citation, quotations, and alterations omitted).

The Defendants argue that the non-signatories can enforce the arbitration agreement, and Plaintiff does not challenge this argument. The Court finds that the non-signatory Defendants can compel arbitration. Plaintiff's claims against the non-signatories and Tesla are virtually indistinguishable and are based on the same facts. Throughout the Complaint, he often refers to "Defendants" without specifying what actions each separate Defendant took, and he avers that Defendants acted in concert. (*See, e.g.*, ECF No. 7 at 20 ("Defendants used discrimination to treat Plaintiff Turrel David unfavorably with contempt and malice while Defendants treated preferred Tesla employees favorably.").) The Court therefore finds that the non-signatories can enforce the Arbitration Clause. *See, e.g.*, *Barmby v. Ourisman Chevrolet, Co.*, Civ. No. DLB-22-2312, 2023 WL 4549739, at *7 (D. Md. July 14, 2023) ("[Plaintiff] does not distinguish between the defendants in his complaint. He alleges all of them engaged in the same misconduct . . . Thus, the requirements for concerted-misconduct estoppel are met."); *Dennie v. MedImmune, Inc.*, Civ. No. PX-16-3643, 2017 WL 2930462, at *4 (D. Md. July 10, 2017) (finding that a non-signatory supervisor could enforce an arbitration agreement where the signatory company's liability largely arose out of the supervisor's misconduct); *In re Titanium Dixoide Antitrust Litig.*, 962 F. Supp. 2d 840, 851 (D. Md. 2013) (finding that non-signatories could enforce an arbitration agreement where "the claims are based on the same facts, are inherently inseparable, and . . . fall within the scope of the arbitration clauses at issue").

### D. Conclusion

Having found that all issues in this case are arbitrable, the Court will dismiss the case

10

without prejudice. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."). A separate Order follows.

DATED this _____ day of March, 2024.

BY THE COURT:

James K. Bredar
Chief Judge